**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION**

| | |
|---|---|
| KRISTA KLADDE, | Case No. ED CV 07-01439 (SH) |
| Plaintiff, | MEMORANDUM DECISION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | |
| Defendant. | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying plaintiff's application for Disability Insurance Benefits under Sections 216(i) and 223 of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of

record, and the parties have filed a joint stipulation. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On August 28, 2002, plaintiff Krista Kladde filed an application for a period of disability or Disability Insurance Benefits, alleging an inability to work since August 21, 2001 due to a bipolar disorder. (Administrative Record ["AR"] 84-86, 101-10). On May 5, 2003, an Administrative Law Judge ("ALJ"), who found that plaintiff could perform work at any exertional level with mental limitations ("limited to routine, repetitive, entry level, minimally stressful work, requiring no contact with the general office population and only superficial interpersonal contact"), determined that plaintiff was not disabled within the meaning of the Social Security Act. (AR 27-33).

On March 29, 2004, following plaintiff's request for a review of the hearing decision (AR 68), the Appeals Council remanded the case to the ALJ with the following instructions: to obtain treatment records from Dr. Wheeler-Caller (plaintiff's treating psychologist) supporting her opinion that it is unlikely plaintiff's condition will ever allow her to return to work; to obtain a consultative mental status examination including psychological testing in order to clarify the nature and severity of plaintiff's mental impairments, and to address all lay statements (including the lay statement from plaintiff's friend) regarding plaintiff's activities, symptoms and emotional distress. (AR 70-71).

On June 3, 2005 (on remand), the ALJ, who found that plaintiff could perform work at any exertional level with mental limitations ("limited to routine, entry level, minimally stressful work requiring no contact with the general public and only superficial interpersonal contact"), determined that plaintiff was not disabled within the meaning of the Social Security Act. (AR 11-19).

Following the Appeals Council's denial of plaintiff's request for a review of the hearing decision (AR 4-7), plaintiff filed an action in this Court. On July 31, 2006, pursuant to a Stipulation to Voluntarily Remand the matter to the ALJ for a new hearing,

for compliance with the Appeals Council's prior order to obtain pychological testing, and for supporting rationale for the weight assigned to the medical evidence, the Court remanded the matter. (AR 469-73)   The Appeals Council subsequently remanded the case to the ALJ. (AR 465-68).

On September 19, 2007 (on remand), another ALJ, who found that plaintiff could perform medium work with no exertional limitations but with certain non-exertional limitations ("precluded from work at unprotected heights and work with continuous interaction with the public"), determined that plaintiff was not disabled within the meaning of the Social Security Act. (AR 438-50).

Plaintiff makes two challenges to the ALJ's 2007 Decision denying benefits (hereinafter referred to as the "2007 Decision"). Plaintiff alleges that the ALJ erred (1) in failing to properly consider all relevant medical evidence, including opinion evidence from plaintiff's treating psychologist and psychiatrist; and (2) in failing to properly consider plaintiff's subjective complaints and the statements of third parties, and to properly assess the credibility of plaintiff and third parties.

Each of plaintiff's contentions will be addressed in turn.

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ failed to comply with the Appeals Council's prior orders and the parties' Stipulation for Voluntary Remand to consider the relevant medical opinion evidence and to provide an explanation for the weight assigned to such opinion evidence. Plaintiff further asserts that the ALJ failed to provide significant or legitimate reasons for rejecting the opinion evidence of plaintiff's treating physicians.

In response, defendant argues that the ALJ properly considered the opinion of evidence of plaintiff's treating physicians in compliance with the Appeal's Council's prior orders and the parties' Stipulation for Voluntary Remand. Defendant further argues

that the ALJ provided specific and legitimate reasons for rejecting the opinion evidence of plaintiff's treating physicians.

The Administrative Record reveals the following. Prior to and at the initial administrative hearing (October 10, 2003, see AR 395) and the second administrative hearing (April 15, 2005), plaintiff alleged she suffered from bipolar disorder and had problems concentrating, focusing and remembering, mood swings, depression, mania, insomnia, chronic fatigue, headaches, confusion, suicidal tendencies, alcoholism and drug abuse. (AR 38-39, 102, 129-36, 145-48, 396-406, 413-24).

Plaintiff points out the various records from plaintiff's treating psychiatrist and psychologist which supported plaintiff's claim of disability:

On September 14, 2001, psychiatrist Joachim Raese, M.D., prepared an Initial Clinical Assessment regarding plaintiff. (AR 269-81). Dr. Raese diagnosed plaintiff with Bipolar Disorder, depression, and Borderline Personality, and wrote that plaintiff had social environment and occupational stressors and a Global Assessment of Function (GAF) score of 55. (AR 274).

On September 13, 2002, psychologist Dianne Wheeler-Callin, Ph.D, who began treating plaintiff on March 15, 2002 (see AR 347-51), prepared a mental disorder questionnaire form regarding plaintiff. (AR 239-44). Under the section "Concentration and Task Completion," Dr. Wheeler-Callin wrote, "Unable to sustain attention. Easily confused, derails, very forgetful, interrupts attempts at routine." (AR 243). Dr. Wheeler-Callin stated that "[plaintiff] is unable to manage the demands of a work situation" and that "[plaintiff's] condition is unlikely to change." (AR 244-45). On December 20, 2002, following an examination, Dr. Wheeler-Callin wrote that plaintiff has "[s]ymptoms of depression and mania, sleep disturbance, racing thoughts, depressed moods, periods of flat affect" and is "unable to complete most tasks, spouse is 'care taker,' she goes to meetings." (AR 283-86).

4

In a letter dated June 17, 2003, Dr. Wheeler-Callin described plaintiff's symptoms, gave plaintiff a current GAF score of 52, and wrote the following:

> "[Plaintiff] is unable to cope with stressful situations. She is not involved in any activities outside the home except her AA meetings, which she also finds stressful. When she agrees to accompany her husband to an outside event, her behavior is often inappropriate and the event is exhausting and unpleasant for her. Without the support and assistance of her husband she would likely further disengage from most activities of daily living and her condition would become more severe. At times her husband pressures her to perform in certain ways and she cycles into more pronounced episodes of either mania or depression. [¶] It seems unlikely that [plaintiff's] condition will ever allow her to return to work. In regular therapy and with the new medications, she is controlled to the point that she does not usually present an active risk to herself." (AR 314-15).

In a letter dated April 26, 2004, Dr. Raese wrote: "[Plaintiff] has been diagnosed with Bipolar disorder with rapid cycling. [¶] Although she has made some progress her mood remains very unstable. She is unable to concentrate and deal with even minor stress. She can not function in any work environment at this time. She is currently experiencing a re-occurrence of her mania, which typically require several months of intensive therapy to get into remission. [¶] In my opinion she is totally and permanently disabled." (AR 368).

In a letter dated August 16, 2004, Dr. Wheeler-Callin, who treated plaintiff between March 15, 2002 and June 4, 2004, wrote: "As stated in my letter of June 17, 2003, [plaintiff] is diagnosed with a Bipolar Disorder. There has been no change in her status. Throughout the time she was my patient she continued to have major episodes of both mania and depression which were occasioanlly (sic) bizarre, always severe and potentially lethal. Stabilization was lengthy, sometimes taking months. There is no

reason whatsoever to expect that this condition will change. [Plaintiff] is unable to work and is permanently disabled." (AR 373).

In a letter dated July 8, 2005 (subsequent to the ALJ's June 3, 2005 Decision denying benefits), Dr. Raese, who evaluated plaintiff on July 8, 2005, wrote: "[Plaintiff] is unable to deal with even minor stress. She cannot function in any work environment. [Plaintiff] is on Abilify and Wellbutrin. She has improved somewhat since last year but remains to have re-occurrence of her mania which requires months of intensive therapy to get it into remission. [¶] [Plaintiff] cannot compete in the open market. [¶] It is my professional opinion that [plaintiff] is now and has been for several years totally and permanently disabled." (AR 498).

Contrary to plaintiff's assertion, the ALJ did consider the opinion evidence from Dr. Wheeler-Callin and Dr. Raese. In the 2007 Decision, the ALJ incorporated by reference the prior decisions and their summaries of the medical evidence. (AR 447).[1] The ALJ addressed the absence of any additional records from Dr. Wheeler-Callin and additional treatment provided by Dr. Raese, as follows: "There are no additional reports from Dr. Wheeler-Callin and the claimant has not continued treatment with her. [¶] The claimant was seen for the first time at Hemet Valley Medical Center by Dr. Neil Simpson [o]n February 27, 2007 (Exhibit 20F, pp. 3-8). The claimant was a new transfer patient from Dr. Raese and the last treatment note was dated November 30, 2006. The treatment notes show that she was seeing Dr. Raese for medication review about every four to six months in 2004 through 2006." (AR 447).

---

[1] In the 2005 Decision, the ALJ stated he had reviewed the medical reports from Dr. Raese and Associates (December 20, 2002 through July 21, 2003, and December 15, 2003 through June 7, 2004) and the medical reports from Dr. Wheeler-Callin (August 16, 2004). (AR 14).

In the 2003 Decision, the ALJ noted treatment notes from plaintiff's psychologist (including a statement dated December 20, 2002) and treatment notes from plaintiff's psychiatrist (including a statement concerning plaintiff's improvement). (AR 29).

Moreover, contrary to plaintiff's assertion, the ALJ gave numerous reasons for not giving weight to the opinion evidence, in compliance with the Appeals Council's orders and the Stipulation for Voluntary Remand. As noted above, the 2007 Decision expressly incorporated by reference the 2005 Decision. In the 2005 Decision, the ALJ rejected Dr. Raese's April 26, 2004 and Dr. Wheeler-Callin's August 16, 2004 opinions of disability, noting that: (a) Dr. Raese's report was "simply a parroting of the claimant's assertion (AR 14); (b) Dr. Raese's opinion was inconsistent with medication management notes and progress notes that reflected that plaintiff had improved significantly while taking appropriate medications and that plaintiff was stable and doing well (AR 14; see AR 365, 369-72); (c) Dr. Raese's opinion was inconsistent with plaintiff's own statement on February 27, 2004 that she felt well enough to want to get pregnant (AR 14; see AR 371); (d) "Dr. Raese's records reflect minimal treatment with no more frequent visits than every months" (AR 17); (e) Dr. Raese did not give a mental status examination report and his clinical notes were "so brief as to be useless; some with no more than a few words" (AR 17); (f) Dr. Raese and Dr. Wheeler-Callin did not consider plaintiff's activities and lifestyle, including frequently driving, shopping, going to movies, taking walks and daily attending AA meetings, which involve "intense interpersonal contact between members that also include socialization and parties" (AR 17; see AR 140); and (g) Dr. Raese's and Dr. Wheeler-Callin's opinions were thoroughly rebutted by the opinion of Linda Smith, M.D., a Board-Eligible psychiatrist who conducted a psychiatric examination of plaintiff on December 9, 2004 (AR 15-17, see AR 382-88)[2], and by the opinion of Louis Fontana, M.D., a Board-Certified psychiatrist who conducted a psychiatric examination of plaintiff on February 12, 2005 (AR 15, 17; see AR 374-81).

Moreover, in the 2007 Decision, the ALJ rejected the opinions of disability (including the low GAF score finding by Dr. Neil Simpson on February 27, 2007, AR

---

[2]  As discussed below, it appears the ALJ mistakenly stated that Dr. Smith was Board-Certified, rather than Board-Eligible.

485-92), because they were contradicted by the opinion of Romualdo Rodriguez, M.D., a Board-Eligible psychiatrist who conducted a psychiatric examination of plaintiff on February 18, 2007 (AR 447-49; see AR 475-484)[3], and by the opinion of Adam Cash, Psy.D, a psychologist who conducted a psychological examination of plaintiff on April 25, 2007 (AR 447-49; see AR 503-12).

Finally, contrary to plaintiff's assertion, the ALJ did provide specific and legitimate reasons for rejecting the opinion evidence of Dr. Raese and Dr. Wheeler-Callin. See Morgan v. Apfel, 169 F.3d 595, 596 (9th Cir. 1999)("When a non-treating physician's opinion contradicts that of the treating physician–but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician–the opinion of the treating physician may be rejected only if the ALJ gives 'specific, legitimate reasons for doing so that are based on substantial evidence in the record.'"); Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)("Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record."); Magallanes v. Bowen, 881 F.2d 747, 751 (1989)("To reject the opinion of a treating physician which conflicts with that of an examining physician, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.").

The ALJ rejected Dr. Raese's and Dr. Wheeler-Callin's opinions, in part, because they were inconsistent with management notes and progress notes and with plaintiff's own statements about her condition and activities (AR 14, 17, 447). See 20 C.F.R. § 404.1527(d)(4)(more weight will given to an opinion that is consistent with the record as a whole); 20 C.F.R. § 416.927(b)-(d)(The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other

---

[3] As discussed below, it appears the ALJ mistakenly referred to Dr. Rodriguez as Dr. Smith.

evidence in the record). The ALJ also rejected Dr. Raese's opinion, in part, because of Dr. Raese's minimal treatment of plaintiff, as well as his "useless" notes regarding such treatment (AR 17). See 20 C.F.R. § 404.1527(d)(2)(i) and (ii)(generally, the more times the treating physician has treated a claimant and the more knowledge the treating physician has about the claimant's impairments, the more weight given to the opinion of the treating physician). The ALJ also rejected Dr. Raese's and Dr. Wheeler-Callin's opinions, in part, because they were rebutted by the opinions of the consultative psychiatric examiners Dr. Smith, Dr. Fontana, and Dr. Rodriguez and consultative psychological examiner Dr. Cash. (AR 15-17, 447-49). See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(the opinions of examining physicians can be specific and legitimate reasons to reject the opinions of treating physicians).

Plaintiff argues that the fact the ALJ stated that the report of the February 18, 2007 consultative psychiatric assessment was prepared by "board certified psychiatrist" Dr. Smith (AR 448), rather than by Board Eligible psychiatrist Dr. Rodriguez, shows that "the ALJ has manipulated the facts to make this report to seem more substantial and relevant than it really is." (Joint Stipulation at 9). Plaintiff does not allege that Dr. Rodriguez's "Board Eligible" status rendered him unable to conduct a thorough and valid assessment. Although the ALJ misstated which psychiatrist had conducted that psychiatric assessment (see 448-49), the ALJ's findings were consistent with Dr. Rodriguez's report (see AR 44 475-83). The record supported the ALJ's decision to give greater weight to Dr. Rodriguez's assessment.

As noted by the ALJ, following a review of the medical records, a mental status examination, observation of plaintiff and an interview, Dr. Rodriguez concluded that plaintiff did not have any psychiatric functional limitations, which was predicated on the fact that plaintiff was clean and sober and had not used her medications for nine months (consistent with plaintiff's reporting to Dr. Simpson a week later that she had not been on her medications for the last nine months) (AR 448, see AR 477, 481, 487); Dr.

Rodriguez's examination revealed that plaintiff made good eye contact, did not display psychomotor agitation, was cooperative, coherent, organized, non-delusional, polite, serious and relaxed, and had normal speech and intact memory (AR 448; see AR 478-79); plaintiff told Dr. Rodriguez she had been taking her medications on and off, and plaintiff showed him untouched and sealed containers of medicine (AR 448; see AR 480-81); and Dr. Rodriguez concluded that plaintiff's "'representation of medication usage, allegations that she has bi-polar disorder without drug and alcohol, as well as her admission of stealing Valium and Vicodin from a dental office that did no inventory where she worked, suggests serious evidence of malingering'" (AR 448; see AR 481). Dr. Rodriguez's opinions constituted substantial evidence supporting the ALJ's findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1991)("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict."); Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

Plaintiff also challenges the ALJ's reliance on Dr. Cash's April 25, 2007 psychological assessment of plaintiff to support the finding of non-disability. In the 2007 Decision, the ALJ made brief references to Dr. Cash. The ALJ stated, "These findings [referring to Dr. Rodriguez's statement of plaintiff's possible malingering] were consistent with the conclusions of Adam Cash, Psy.D., who conducted a psychological evaluation dated April 25, 2007 (Exhibit 21F, pp. 1-10). Dr. Cash reported that the test results indicated exaggeration of her difficulties and degree of pathology and therefore all test results should be interpreted with caution (pp. 1-2)." (AR 448). The ALJ thereafter stated that the conclusion of Dr. Smith is "given great weight" and "is highly credible" because it is "supported by the claimant's treatment history and her admissions about her daily living and her past work." (AR 448-49). The ALJ thereafter stated that plaintiff's

low GAF score [from Dr. Simpson on February 27, 2007, AR 486] is more likely a result of her propensity to exaggerate her symptoms and pathology as noted by both Dr. Cash and Dr. [Rodriguez]."  (AR 449).

Plaintiff argues that "the ALJ has taken portions of Dr. Cash's report out of context and again mischaracterized these findings in his decision to support his ultimate decision that this Plaintiff is not disabled." (Joint Stipulation at 9).  While plaintiff admits that there were references in Dr. Cash's report to possible exaggeration by plaintiff (AR 507), plaintiff points out that: (a) Dr. Cash stated that plaintiff "attempted to answer all of the questions and maintain good effort throughout testing" (AR 505); (b) Dr. Cash diagnosed plaintiff with a mood disorder, ruled out a borderline personality disorder, and gave plaintiff a current GAF of 55; and (c) Dr. Cash's conclusions were limited in scope: "The findings are based on the test performance, observation, and interaction with the claimant on the day of the evaluation only" (AR 507-08).

Although the ALJ did not specificallly address the above items pointed out by plaintiff, it is clear that the ALJ considered the entirety of Dr. Cash's assessment of plaintiff.  Dr. Cash's opinion of exaggeration, which was consistent with Dr. Rodriguez's opinion of possible malingering, constituted substantial evidence to support the ALJ's findings.

///
///
///

**ISSUE NO. 2**

Plaintiff asserts that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony  regarding the severity of her pain and/or other symptoms. Plaintiff further asserts that the ALJ failed to address the lay statement of plaintiff's husband, as originally ordered by the Appeals Council.  Plaintiff further asserts that the ALJ failed to provide significant or legitimate reasons for rejecting plaintiff's and her

husband's statements regarding plaintiff's inability to sustain work-related activities. In response, defendant argues that the ALJ properly found that plaintiff's testimony regarding the severity of her pain and/or other symptoms was not credible. Defendant further argues that the ALJ properly evaluated the statements of plaintiff and her husband.

In the 2007 Decision, the ALJ discussed plaintiff's testimony at the March 14, 2007 hearing, including plaintiff's history of alcohol and drug abuse, plaintiff's attendance at AA meetings, plaintiff's admission that she does better when she takes her prescribed medications, plaintiff's belief she could not work in a non-stressful job because of her experience in her last job (and plaintiff's admission she was using drugs she stole from that job), plaintiff's medication-free vacation to Alaska with her husband the past year, and plaintiff's admission she had not been hospitalized the past four years. (AR 446; see AR 517-24, 526-31). Based on his consideration of plaintiff's daily activities -- taking care of her personal needs, running errands, going to the store, driving her own car, cooking, making snacks, doing household chores, participating in outside activities such as Alcoholics Anonymous and poker games, leaving home and traveling alone, handling her own cash and paying her bills, and maintaining good relationships with her family, relative, friends, neighbors and others (AR 446; see AR 478) -- the ALJ, found that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (AR 446-47).

Contrary to plaintiff's assertion, the ALJ stated clear and convincing reasons for rejecting plaintiff's testimony about the severity of her symptoms. See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ specifically cited to plaintiff's ability to carry out her daily activities as a basis for finding plaintiff's testimony not to be credible. See Reddick, supra (noting that when the level of a claimant's activities are inconsistent with his or her claimed limitations, those activities have bearing on the claimant's credibility; Light v. Social

Security Administration, 119 F.3d 789, 792 (9th Cir. 1997)(an ALJ may rely on conflicts between a claimant's testimony and the claimant's conduct in finding the claimant not to be credible); Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991)("[I]f the claimant engages in numerous daily activities involving skills that could be transferred to the workplace, an adjudicator may discredit the claimant's allegations upon making specific finding relating to the claimant's daily activities."); 20 C.F.R. § 404.1529(c)(3) (One of the enumerated factors in determining the nature and severity of a claimant's symptoms is the claimant's daily activities); Social Security Ruling 96-7P.    With respect to plaintiff's assertion that the ALJ failed to address the lay statement of plaintiff's husband, the record reflects that the ALJ did in fact address plaintiff's husband's statement. On September 14, 2002, plaintiff's husband completed a Daily Activities Questionnaire. (AR 137-42).  In the 2005 Decision (incorporated into the 2007 Decision), the ALJ summarized the questionnaire completed by plaintiff's husband, as follows:

> "He reported that on a daily basis the [plaintiff] cleaned the house, cared for pets, watched television, shopped, and attended one to two AA meetings.  He said she had no difficulty caring for herself and that she helped with the cooking.  He reported that the [plaintiff] shopped for food, clothes and household needs on a weekly basis and that she did not need assistance.  He said that he paid most of the bills but that the [plaintiff] managed her own checking and savings account. Specifically, he noted that she dusted, vacuumed, watered the plants and did dishes.  He reported that she left the house about twice a day.  He said she drove a car for transportation.  He sad she was an active member of AA and attended barbecues and other AA parties and functions." (AR 16-17, citing AR 137-42).

Moreover, contrary to plaintiff's characterization, the ALJ accepted many of the statements made in the Daily Activities Questionnaires completed by plaintiff and her husband.  In the 2005 Decision (incorporated into the 2007 Decision), prior to

summarizing the Daily Activities Questionnaire completed by plaintiff's husband, the ALJ summarized the Daily Activities Questionnaire completed by plaintiff on September 22, 2002 as follows:

> "The [plaintiff] reported that she made a list of things to do every day and completed the list. She said she went to AA meetings almost every day and sometimes twice a day. She said she shopped, made phone calls, kept Dr. appointments, etc. The [plaintiff] said she was able to care for all of her own needs and that she lived with her husband who worked during the day. The [plaintiff] said she did not do much cooking but she "popped frozen entrees in the microwave". She said no one helped her shop and that she depended on her list to remember things. The [plaintiff] said she did household chores and she enjoyed her houseplants, pets, photographs, television, movies, music, AA meetings and going out to dinner." (AR 16, citing AR 129-36).

After summarizing the two Daily Activities Questionnaires, the ALJ stated: "The daily activity questionnaires are consistent with the findings adopted herein. Although the [plaintiff's] comments in the questionnaires are more liberal than what she admitted in testimony, these statements are consistent with the reports to the consultative examiner and the objective records. The [plaintiff] has a very active daily life with little need of assistance from her husband." (AR 17). Thus, the ALJ did not reject plaintiff's and her husband's statements about her daily activities.

Finally, in the 2007 Decision, the ALJ provided legitimate reasons for finding that plaintiff had the residual functional capacity to perform medium work with no exertional limitations. The ALJ noted that plaintiff had not been hospitalized in the past four years, and that her daily living activities (getting along well with people, driving herself to wherever she needed to go, traveling, maintaining a valid California driver's license, cooking, cleaning, caring for herself, having a relatively normal social life) "indicate[d] a person who functions rather normally." (AR 447). The ALJ further noted that the

medical evidence and plaintiff's testimony indicate that she can function in the workplace if she stays on her medications and abstains from drugs and alcohol. (AR 447-48). The ALJ further noted that, based on the statements contained in the report of Dr. Rodriguez's February 18, 2007 consultative psychiatric assessment of plaintiff , discussed above, Dr. Rodriguez's conclusion that "there are no functional limitations on functional assessment scales one through eight" (AR 481), was "supported by the [plaintiff's] treatment history and her admissions about daily living and her past work." (AR 448-49).

Therefore, substantial evidence, including plaintiff's own testimony, the statements made by plaintiff and her husband in their Daily Activities Questionnaires, and the consultative examinations of plaintiff conducted by Dr. Rodriguez, Dr. Cash, Dr. Smith and Dr. Fontana, supported the ALJ's finding regarding plaintiff's ability to work. ///
///
///
///
///

## **ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

DATED: March 26, 2009

/ s /

STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE